May it please the Court, I am Alexandra Manbeck, the attorney for Appellant Sarah Tran. The sole issue before this Court is whether the Court has jurisdiction over this case, Your Honor, and I submit that the Court does. The district court denied the appellant's action based on the fact that she did not exhaust her administrative remedies. But immediately after the Court made such ruling, the defendant, the appellee here, scheduled a meeting with the beneficiary in Vietnam, and instead of making a decision, continued to delay this case by sending the case back to Immigration and Naturalization Service. Let me ask you a question that comes right from your particular situation. You're arguing facts that are not even in this record, aren't you? They are, Your Honor. They're not in the district court record, are they? We... In fact, what the district court did or didn't do is not even part of what you're arguing about. It is some of the facts that developed immediately after the district court rendered the judgment, but our... Well, and how in the day... How am I supposed to, based on my particular rules that come before the court of appeals, how am I supposed to take into account all these things that weren't even before the district court, weren't even raised before the district court, weren't even given to the district court? Why am I supposed to change the district court's decision based on that? Your Honor... What rule would allow me to do that? Your Honor, I refer the court to the Case Griffin v. County School Board, 377 U.S. 218, in which the Supreme Court allowed the lower court to take into account additional facts that arise after a decision because the allegations detail a continual, persistent effort, like the continuing violation doctrine, Your Honor. Well, my worry is that I have a district court decision, and I guess I'm kind of hampered because I was an old district court judge. When my decisions went up to the Ninth Circuit and they decided it on something I didn't even get argued about, I was kind of mad. So I guess I get there. But I don't find any rule, and I haven't seen that, unless that case was cited in your brief and we found it to be not on point, I don't find anything that would suggest that if you're not challenging something in front of the district court, something the court heard, something they dealt with, that I should hear your appeal. I'm having a tough time. Let me ask you this, all right? Let's say we dismiss this case. Then your clients could file a new claim in the federal court seeking a writ of mandamus to compel the USCIS to make a decision in this case. Well, we would file we have to file a new Your Honor, the reason we appeal here is that because the fact indicates that this is a government. This is both the consular, the Department of State and the consular division that caused this problem. There were no facts that changed in terms of exhaustion. We can't, we have this doctrine of consular non-reviewability. So they're apparently having some kind of a problem here. And I don't know what it is. No idea. I might speculate, but we don't want to do that. So they've sent the case back to the USCIS here. The case is back here, right? Yes, Your Honor. Okay. So now it's back here, and the USCIS hasn't acted. So maybe your remedy is to file a new claim. I don't know. I'm just, don't tell me. Your Honor, the problem is that even if USCIS already approved it twice, they approved it once in 1989 because initially Mrs. Tran applied in 1980. They approved it in 1989. The Department of State, the consular division denied the application, denied the visa, even after USCIS approved it once in 1989. The appellant applied again in 2000. She got approval again from USCIS in 2003. And now the consulate, again, instead of making a decision after the second try, sent it back to USCIS. There were no ---- Well, you know what we ought to do. Let's hear from the government and find out just what's going on here. Thank you, Your Honor. Okay. Good morning, Your Honor. Sam Bentley for Secretary of State and the Consulate General of Ho Chi Minh City Consulate. Yeah, you look like a State Department man. Department of Justice. Well, thank you. Thank you. That was a compliment. Go ahead. You say Department of Justice. How you look may go downhill. He's all right, I can tell. So what's going on here? Well, one thing I would want to add, at the end of my brief I do mention the Patel case, and the Patel decision does specifically address the situation where the consulate returns the visa petition to USCIS. I think it's at page 932. Okay. And said that's a proper procedure, that's a proper reason for suspending action to get USCIS to look at it again and then to send a memo, which they have done. They've sent a lengthy memo I've read, just read yesterday. They detail why they think USCIS should look at it again. It had to go through the National Visa Center somewhere in New England, and then it just finally made its way to USCIS in May. Yeah. And so I contacted USCIS just to make sure it's on track, and they said they've appointed an adjudicator. And if they decide to institute revocation proceedings, they will send a notice of intent. If they decide to do what? If the adjudicator decides to institute revocation proceedings, he or she will send a notice of intent to revoke to an appellant's attorney, and then there will be a process. Revoke what? The underlying visa petition. Underlying the visa petition. That's correct. So, in other words, USCIS. Does counsel for the petitioner, does she know what's going on, what the problem is and all that? I believe so, Your Honor. It's not a classified state secret. No, Your Honor. No, in fact, I think my brief laid out all the concerns. What are they looking at? Well, the appellant, Sarah Tran, is claiming that she's the adoptive mother of Bick Tran. Yeah. And there's a long history. It started back in 1980, in the 80s, where the State Department looked at the adoption certificate that was or decree that had been submitted and said they didn't think it was genuine. They also noted that Sarah Tran had not mentioned that Bick Tran was her daughter in both her addressment application and her citizenship or naturalization application, that she left Vietnam five months after the alleged adoption and didn't take Bick with her, that the husband left Vietnam and left Bick behind, that a number of things that indicate that there isn't a relationship. Have you taken any blood samples? Well, she's not. They're saying that they adopted her. I think she is related. I think she's a second cousin or a first cousin once removed or something like that. I have no question. Okay. Why is it taking the agency so long just to say no? Well, I don't think it's taking that long, Your Honor. The visa became available in 2005, January 2005. I think that there's been some misleading suggestion that this started in 2000 or 2003. The visa petition was approved in 2003. I guess it was first filed in 2000. And that was the priority, 2000. But the visa, because of the quota system, didn't become available until January 2005. The State Department immediately set an interview for February 2005. An appellant didn't show up. Bick Tran did not show up for the interview. A termination notice was sent out saying if you don't reinstate this within a year, it's going to be gone forever, the registration. And that's when the lawsuit came and the government pointed out, well, you haven't exhausted that. You've got to apply for reinstatement of registration, which they did. And immediately after that, they got the interview. Immediately after the interview, the packet was put together and sent to the National Visa Center. I mean, I don't think there's been any delay whatsoever. It's all happened very quickly. Is there any delay that Your Honor wants me to address? I don't see it. Well, so what happened now? Was there a timeline now? This revocation proceeding, I think, is going to take place more quickly only because I have requested it and because it's under litigation. I mean, I've seen revocation proceedings take a long time in the past. I've been doing this for about 20 years. But I think this one will go forward more quickly. Has anything ever happened with her attorney's sponsored program? I mean, in August 2006, the attorney sponsored her under an H-2B visa program. That's correct. That was denied. Oh, that was denied? That was denied. When? That's not in the record, so you don't need to tell me. Oh, I thought it was. But she – I have it. It's Supplemental Record 5. Oh, Supplemental Record, all right. Our record. And the reasons were given, and that's on pages 7 and 8 of the record I submitted. No, that was – there was the reason given that she was an intending immigrant. She showed up saying that she wanted this temporary visa, didn't give her a correct birth date, and during the interview they ran her name and found that she was really – she already had an immigrant visa petition pending and she was an intending immigrant. Well, not only that, but she in that visa – or in that application said she'd never been refused a visa. Nobody had ever filed one for her before. She had no father and mother in the U.S., those kind of things. That's why the consulate's sending it back to USCIS for them to look at this more closely, because they've had more personal contact with Big Tron and Ho Chi Minh City, and they put together the package and sent it back for review. Well, have the court records checked in Ho Chi Minh City or Saigon? They have courts there. Yes, Your Honor. So who handles adoptions in that country? Your Honor, I'm not familiar with that process, but an adoption decree was submitted by appellants, and a forensic – according to the State Department, the consulate conducted a forensic evaluation of that original adoption decree and determined that it was not genuine, as they put it. Okay. All right. Thanks. All right. Thank you, Your Honor. Thank you, Your Honor. Your Honor, I would like to clarify to the court that the government made the argument of unclean hands. Yeah, there's nothing we can do until you have this hearing, this investigation that they're conducting, and counsel for the Secretary of State tells us that they're putting it on track and he's going to keep his eye on it and make sure it doesn't get lost. And so we just have to wait until it's done. And they did look at that – had forensic experts look at that adoption certificate, and they say it's fake, you know. Your Honor, they have never – under the law, under the regulation, they have to prove or inform us how they state that or how they find that the adoption was fake because it was approved by the South Vietnamese government before the communists take over. So the communist government is not going to approve a document that was generated by the South Vietnamese government. And we are unable to disprove anything that was done by a government that has been taken over. That government is gone, Your Honor. They're going to have a hearing on this, right, counsel? They haven't – that's what we seek in the written mandamus, to ask them to deny the petition. Mandamus is a remedy that's rarely granted. So they're going to have a hearing on all this? I don't think it will be a formal hearing in a setting like this, but there will be an opportunity to respond in writing to the notice of intent to revoke. But they don't talk to anybody in live? Well, Your Honor, no, not in that process, but it is judicially reviewable. What? It is judicially reviewable. By whom? District Court, under the APA. It means the petition denials, verifications, I believe are reviewable, judicially reviewable. The problem, the only reason we're seeking court intervention here, Your Honor, is that because this process has taken like 28 years. It was started in 1980 when Sarah Tran first applied under the orderly departure program, when the U.S. government allowed the refugee to come to the United States to reunite with her family under a special program for Vietnamese refugees. So for the State Department to come after 28 years and then send it back to IMS and say, you take a look at it and then you see fit to revoke it, that's unfair to us because we, counsel here say that it's going to be on the fast track, but under current law, immigration or the Department of Justice can take five years, eight years, can take as long as they wish to process this, and we have no way of seeking court intervention until they finish with it. And so that's the reason that we're coming to the court to ask for an order that the consulate make a decision on a visa application that's been really pending for a long time instead of sending back the immigration. Well, I don't think we can do that, and I don't know that that's a good idea for you either. But I will ask the counsel for the government that we should quarterly just send the court a letter and a copy to counsel for the applicant and just tell us where it is in the process. So, you know, a lot of things get lost, huh? Yeah.  Thank you, Your Honor. Thank you. Thank you very much. Okay, now we come to the next one, Addison v. Compton Unified School District. Addison. Addison.
judges: Pregerson, Smith, Collins